**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN ACADEMY OF PEDIATRICS, <br><br> *Plaintiff*, <br><br> v. <br><br> FEDERAL TRADE COMMISSION; ANDREW N. FERGUSON, in his official capacity as Chair of the Federal Trade Commission; MARK R. MEADOR, in his official capacity as Commissioner of the Federal Trade Commission, <br><br> *Defendants*. | Case No. 1:26-cv-00508-CRC |

**<u>PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.    The FTC's Justifications for the CID Are Pretextual. ......................................................... 2

      A.    The FTC's Cited Legal and Factual Authority Underscore that Its
           Justification for the CID is Pretextual. ........................................................... 3

      B.    The FTC's Failure to Address AAP's Arguments about the Limits of FTC
           Jurisdiction Confirms the CID Has No Lawful Basis. ........................................ 5

      C.    The FTC Mischaracterizes Case Law and Makes Unsupported Factual
           Assertions That This Court Should Disregard. ................................................. 9

II.    This Court Has the Authority to Hear AAP's Pre-Enforcement Challenge. .................... 10

      A.    The FTC Act Does Not Deprive This Court of Jurisdiction. ............................ 10

           1.    There Is No "Fairly Discernible" Intent in the FTC Act to Preclude
                District Court Jurisdiction. ....................................................................... 10

           2.    AAP's Claims Are Not of the Type Congress Intended to Be
                Reviewed Within the FTC Act's Review Scheme. ..................................... 12

      B.    AAP Has a Cause of Action to Seek Equitable Relief for Ongoing
           Constitutional Violations. ............................................................................ 14

III.    AAP Is Likely to Succeed on Its First Amendment Retaliation Claim. ......................... 17

      A.    Retaliatory Investigations Are Cognizable Under the First Amendment. ............ 17

      B.    The HHS Litigation Is Relevant to Causation Because It Involved AAP's
           Protected Petition Activity. ........................................................................... 19

      C.    The Timeline Supports an Inference of Retaliation. ......................................... 21

      D.    AAP Has Demonstrated That the CID Chilled Its Speech. ............................... 22

IV.    AAP Is Likely to Succeed on Its First and Fourth Amendment Claim. ......................... 24

V.    The Remaining Equitable Factors Favor an Injunction. ................................................. 24

CONCLUSION ....................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Am. Acad. of Pediatrics v. U.S. Dep't of Health and Hum. Servs.*,
— F. Supp. 3d —, 2026 WL 80796 (D.D.C. 2026)...............................................................9, 22

*American Bar Association v. U.S. Department of Justice*,
783 F. Supp. 3d 236 (D.D.C. 2025)..................................................................................22

*Arch Coal, Inc. v. Acosta*,
888 F.3d 493 (D.C. Cir. 2018)...................................................................................10, 12

*Archer v. Chisholm*,
870 F.3d 603 (7th Cir. 2017) ...........................................................................................19

*Aref v. Lynch*,
833 F.3d 242 (D.C. Cir. 2016)....................................................................................21, 23

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015)..........................................................................................................15

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023)................................................................................................. *passim*

*BEG Invs., LLC v. Alberti*,
144 F. Supp. 3d 16 (D.D.C. 2015) ...................................................................................22

*Bell v. Hood*,
327 U.S. 678 (1946)..........................................................................................................17

*Borough of Duryea v. Guarnieri*,
564 U.S. 379 (2011)..........................................................................................................20

*Breaux v. City of Garland*,
205 F.3d 150 (5th Cir. 2000) ...........................................................................................19

*Buckley v. Fitzsimmons*,
509 U.S. 259 (1993)..........................................................................................................18

*Corr. Servs. Corp. v. Malesko*,
534 U.S. 61 (2001)......................................................................................................15, 17

*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012).................................................................................................10, 11, 14

*Elrod v. Burns*,
427 U.S. 347 (1976)..........................................................................................................23

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010)............................................................................................12, 14, 15

*FTC v. Agora Financial, LLC*,
    447 F. Supp. 3d 350 (D. Md. 2020) ...........................................................................6

*FTC v. Cinderella Career & Finishing School, Inc.*,
    404 F.2d 1308 (D.C. Cir. 1968).................................................................................23

*FTC v. Claire Furnace Co.*,
    274 U.S. 160 (1927)....................................................................................16, 17, 25

*FTC v. Nat'l Urological Grp., Inc.*,
    645 F. Supp. 2d 1167 (N.D. Ga. 2008) ......................................................................3

*Gordon v. Holder*,
    721 F.3d 638 (D.C. Cir. 2013)...................................................................................25

*Hamilton v. Geithner*,
    666 F.3d 1344 (D.C. Cir. 2012)................................................................................20

*Hartman v. Moore*,
    547 U.S. 250 (2006)....................................................................................17, 18, 21

*J.T.H. v. Missouri Department of Social Services Children's Division*,
    39 F.4th 489 (8th Cir. 2022) .....................................................................................19

*Karem v. Trump*,
    960 F.3d 656 (D.C. Cir. 2020)...............................................................................23, 25

*League of Women Voters of the U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016)......................................................................................25

*Lozman v. Riviera Beach*,
    585 U.S. 87 (2018).....................................................................................................20

*Media Matters for Am. v. FTC*,
    805 F. Supp. 3d 105 (D.D.C. 2025)...........................................................11, 18, 23

*Media Matters for Am. v. FTC*,
    No. 25-5302, 2025 WL 2988966 (D.C. Cir. Oct. 23, 2025)........................... *passim*

*Media Matters for Am. v. Paxton*,
    138 F.4th 563 (D.C. Cir. 2025)........................................................16, 18, 19, 25

*NAACP v. Alabama*,
    357 U.S. 449 (1958).............................................................................................23, 24

*National Treasury Employees Union v. Trump*,
  770 F. Supp. 3d 1 (D.D.C. 2025)........................................................................13

*Novartis Corp. v. FTC*,
  223 F.3d 783 (D.C. Cir. 2000).............................................................................3

*Rehberg v. Paulk*,
  611 F.3d 828 (11th Cir. 2010) ...........................................................................19

*Reisman v. Caplin*,
  375 U.S. 440 (1964)......................................................................................16, 17

*Singletary v. District of Columbia*,
  351 F.3d 519 (D.C. Cir. 2005)............................................................................21

*Smith v. De Novo Legal, LLC*,
  905 F. Supp. 2d 99 (D.D.C. 2012)......................................................................22

*\*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994)............................................................................... *passim*

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025).............................................................................................25

*Turner v. U.S. Agency for Glob. Media*,
  502 F. Supp. 3d 333 (D.D.C. 2020)....................................................................25

*Twitter, Inc. v. Paxton*,
  56 F.4th 1170 (9th Cir. 2022) ............................................................................16

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017)............................................................................................15

**Statutes**

15 U.S.C. § 57b-1(e) ...................................................................................11, 13

**Administrative Decisions**

*In re Daniel Chapter One*,
  148 F.T.C. 832 (2009).........................................................................................3

*In re Formor, Inc.*,
  132 F.T.C. 72 (2001)...........................................................................................3

*In re Lexium Int'l, LLC*,
  162 F.T.C. 1212 (2016).......................................................................................4

*In re NBTY, Inc.*,
 151 F.T.C. 201 (2011).................................................................................................3

*In re Nestle Healthcare Nutrition, Inc.*,
 151 F.T.C. 1 (2011)....................................................................................................3

*In re POM Wonderful LLC*,
 155 F.T.C. 1 (2013)....................................................................................................3

Order Denying Petition to Quash Civil Investigative Demand, *In re March 19, 2014 Civil
 Investigative Demand Issued to Police Protective Fund, Inc.*,
 No. 1323239, (May 14, 2014)....................................................................................4

**Other Authorities**

Amended Complaint, *Axon Enter. Inc. v. FTC*,
 No. 20-cv-00014 (D. Ariz. Aug. 30, 2023),.............................................................15

Brief for United States as Amicus Curiae, *First Choice Women's Resource Ctrs., Inc. v. Platkin*,
 (No. 24-781) (Aug. 28, 2025) ..................................................................................16

Joint Status Report, *Am. Acad. of Pediatrics v. U.S. Dep't of Health and Hum. Servs.*,
 No. 1:25-cv-04505 (Mar. 10, 2026)........................................................................20

Minute Entry, *State of Oregon v. Kennedy*,
 No. 6:25-cv-02409, (D. Or. March 19, 2026)............................................................6

Petition to Enforce Civil Investigative Demand, *FTC v. Kushly, LLC*,
 No. 2:20-mc-00036-SMB (D. Ariz. July 30, 2020)....................................................4

Petition to Enforce Civil Investigative Demand, *FTC v Redwood Sci. Techs.*,
 No. 2:17-cv-07921 (C.D. Cal. Oct. 30, 2017)............................................................4

U.S. Const. amend. I................................................................................................. *passim*

*Wright & Miller's Federal Practice & Procedure* § 2949 (3d ed. 1998)........................9

**INTRODUCTION**

As part of the Administration's campaign to restrict gender-affirming care ("GAC"), and just four days after the American Academy of Pediatrics ("AAP") prevailed in this Court against another federal agency for retaliatory conduct in response to AAP's public support of GAC, the Federal Trade Commission ("FTC") issued a sweeping Civil Investigative Demand ("CID") demanding virtually all materials related to AAP's work on GAC.  And now, the FTC asks this Court to treat the CID as a routine investigatory step and to deny review unless and until the agency chooses to seek enforcement.  But nothing about this investigation is routine.

Contrary to the FTC's assertions, the CID is not an "ordinary" investigation into "healthcare sector entities" conducted pursuant to its "standard practices."  Unlike the defendants in each of the "healthcare sector" enforcement examples the FTC cites, AAP is not a company operating for profit and has not deceptively advertised health products for sale to consumers.  The FTC cannot identify a single prior instance in which it has investigated a non-profit medical association that does not sell health products.  Nor can the FTC's purported basis for asserting jurisdiction over AAP and its clinical guidance be characterized as routine.  The FTC now claims it needs to investigate AAP in order to know if it has jurisdiction to investigate.  But even if the FTC can permissibly issue CIDs to determine its jurisdiction, it must have some basis for believing the targeted speech is commercial.  The FTC has no reasonable basis for any such belief here.  In fact, when AAP offered to share information concerning these threshold jurisdictional questions during the meet and confer process, the FTC staff declined this offer.

Rather than articulating any statutory basis for investigating AAP, the FTC argues that AAP's challenges must await enforcement proceedings.  This argument misapplies the Supreme Court's claim-channeling precedent in a manner that would foreclose judicial review altogether and strip AAP of its First and Fourth Amendment protections.  As explained in AAP's opening

brief, the harm here is immediate and ongoing: each day the CID remains in place, it chills protected speech and association in ways that cannot be remedied.

The FTC's investigation—triggered by AAP's protected speech and petitioning activity—is precisely the kind of retaliatory conduct the First Amendment prohibits. The temporal proximity of the CID to AAP's recent litigation victory against the U.S. Department of Health and Human Services ("HHS"), together with the broader pattern of the FTC's and this Administration's conduct related to GAC, demonstrate that AAP is likely to prevail on its claim that the FTC's action is retaliatory. The FTC's efforts to sever that inference are unavailing and do not demonstrate that the CID would have been issued absent a retaliatory purpose.

Because the FTC has failed to articulate any lawful basis for its investigation, and because the CID inflicts ongoing constitutional injury, AAP is likely to succeed on the merits and is entitled to preliminary injunctive relief.

## ARGUMENT

### I.    The FTC's Justifications for the CID Are Pretextual.

In an effort to diminish the clear evidence of retaliatory intent behind the CID, the FTC's Opposition paints its investigation of AAP as an "ordinary" investigation of "false or unsubstantiated representations pertaining to medical services" that is being conducted according to its "standard practices." ECF No. 24 at 1, 8–9 ("Opp."). These assertions do not pass inspection. *First*, the case law and guidance on which the FTC relies to legitimize its CID highlight that its justification for the investigation into AAP is pretextual. Those prior investigations and cases involved companies that advertised *health products for sale* with unsubstantiated claims, *see infra* n.1, but AAP does not advertise or sell health products. *Second*, the FTC's failure to engage meaningfully with AAP's arguments about the scope of the FTC's authority indicates that the FTC has no basis to believe that AAP is engaged in commercial activity subject to its jurisdiction.

2

Indeed, the FTC offers inconsistent explanations for issuing the CID, casting doubt on the legitimacy of all its justifications. *Finally*, the FTC makes numerous dubious, unsupported factual assertions throughout their brief that the Court should disregard.

### A. The FTC's Cited Legal and Factual Authority Underscore that Its Justification for the CID is Pretextual.

The FTC defends its investigation into AAP by asserting that it has followed "standard practices," as in prior investigations into "healthcare sector entities." *See* Opp. 9. But the FTC fails to mention that all the prior FTC cases it cites involved an entity, unlike AAP, that *sells health products*. Every one of the FTC's cases involved a company that was accused of making deceptive health claims in advertising in an effort to sell health products to consumers.[1] For example, these cases involved the advertising and sale of: juices that were promoted as reducing risk of heart disease and cancer; dietary supplements that were claimed to boost children's health, treat medical illnesses like cancer, and promote weight loss; and over-the-counter drugs that were purportedly superior at relieving back pain. Similarly, the prior investigations the FTC cites to show this CID is typical focused on corporations advertising and selling health products, such as CBD gummies for treatment of various diseases; smoke cessation oral strips; and dietary supplements for weight

---

[1] *See e.g.*, *In re POM Wonderful LLC*, 155 F.T.C. 1, 2 (2013) (addressing claims that juice products could treat and reduce the risk of heart disease and prostate cancer); *In re NBTY, Inc.*, 151 F.T.C. 201, 203–06 (2011) (addressing claims that dietary supplements promote children's eye and brain development); *In re Nestle Healthcare Nutrition, Inc.*, 151 F.T.C. 1, 2 (2011) (addressing claims that fortified drink product for children reduces risk of colds, flu, and other respiratory infections); *In re Daniel Chapter One*, 148 F.T.C. 832, 904–35 (2009) (addressing claims that supplement products purported to prevent, treat, or cure cancer and tumors); *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1190 (N.D. Ga. 2008) (addressing claims as to efficacy of weight loss and sexual enhancement dietary supplements); *In re Formor, Inc.*, 132 F.T.C. 72, 74 (2001) (addressing claims by corporation selling dietary supplements that various products could treat HIV and other medical illnesses); *Novartis Corp. v. FTC*, 223 F.3d 783, 785 (D.C. Cir. 2000) (addressing claims of superior efficacy for over-the-counter back pain products).

loss, cognitive benefits, and improved sleep.[2]  In contrast, AAP is a non-profit that issues clinical guidance to inform doctors about research on a wide variety of pediatric topics.  AAP does not make health claims aimed at generating commercial demand or in order to profit from selling health products.  The mismatch between the FTC's "standard practices" and the facts underlying this investigation demonstrate that the FTC's justification for investigating AAP is pretextual.[3]

Nor does the FTC's Health Products Compliance Guidance support the FTC's assertion that the agency is acting in a manner consistent with its "usual approach."  Opp. 9.  That guidance addresses how companies can make "claims about the benefits and safety of health-related products" that are "truthful, not misleading, and supported by science."  *Id.*  But that guidance acknowledges that "[t]he FTC doesn't regulate the content or accuracy of statements made in independently written and published books, articles, or other non-commercial literature."  *See* Health Products Compliance Guidance at 32 (Dec. 2022), https://perma.cc/6U4E-8E89.  Instead, the FTC prohibits "the deceptive use of such materials in the marketing of products" and whether that information is "subject to FTC jurisdiction turns largely on whether the materials have been created or are being used *by a marketer specifically for the purpose of promoting its product.*"  *See id.* (emphasis added).  It is undisputed that AAP does not sell health products.  Its clinical guidance on GAC, including the 2018 Policy Statement, is precisely the type of independent non-commercial literature that according to the FTC's own guidance is not regulated by the FTC.

---

[2] *See, e.g.*, *FTC v. Kushly, LLC*, No. 2:20-mc-00036-SMB (D. Ariz. July 30, 2020) (addressing false or unsubstantiated claims about cannabidiol products' ability to treat, mitigate, or cure diseases); *FTC v Redwood Sci. Techs.*, No. 2:17-cv-07921 (C.D. Cal. Oct. 30, 2017) (addressing efficacy claims of smoke cessation product and appetite suppressant); *In re Lexium Int'l, LLC*, 162 F.T.C. 1212 (2016) (addressing claims for cognitive function, weight loss, and sleep supplements).

[3] The FTC also cites one CID issued to a purported non-profit, but that matter involved allegedly deceptive claims made in telephone solicitations about how donation money would be used.  *See* Order Denying Petition to Quash CID in the Matter of March 19, 2014, CID Issued to Police Protective Fund, Inc. (May 22, 2014), https://perma.cc/8LFV-7QJ6.

4

Nowhere does the Opposition identify a single precedent with facts similar to those presented here, *i.e.*, where a non-profit organization that does not sell health products is being investigated for statements made in scientific and medical guidance documents. The FTC points to a variety of news articles, its own workshop, and the comments it received after the workshop in order to defend the basis for its investigation into the "safety and effectiveness of certain treatments for pediatric gender dysphoria." Opp. 5–12, 22. But whether the FTC has amassed enough evidence to justify *an* investigation into "PGDT" is beside the point.[4] This CID targets AAP, and AAP does not offer, sell, or provide such treatments. As FTC Chairman Ferguson has stated, "the FTC is the federal government's guardian against false and deceptive health claims," and the Commission has brought "dozens of enforcement actions" against "*businesses and individuals* who have made claims about *their* health products and services that were not backed by scientific evidence." Opp. 25 (emphasis added). AAP is not a "business" nor "an individual" who is selling or advertising "health products and services."

AAP has never suggested that "the executive branch simply is not allowed to investigate potential wrongdoing if it relates to PGDT." *Id.* at 2. This case concerns whether the FTC may abuse its subpoena power to retaliate against speakers it disfavors. The FTC's inability to cite any supporting legal authority to justify an investigation into a non-profit that does not sell health products shows that the real reason for the CID is retaliation for protected speech.

B.      **The FTC's Failure to Address AAP's Arguments about the Limits of FTC Jurisdiction Confirms the CID Has No Lawful Basis.**

---

[4] Tellingly, the FTC's discussion about recent developments regarding PGDT barely mentions AAP and seeks to introduce information from internet articles, such as those in the *Daily Mail*, the *New York Post,* and *The Free Press*. *See* Opp. 5–8. In an attempt to justify its CID to AAP, the FTC cites statements made by an entirely different organization and alleges that various "PGDT providers" (which AAP is definitively not) may have harmed their patients. *See id.* at 7–8.

The Opposition largely sidesteps the question of whether the FTC has statutory authority to investigate AAP or its speech. The FTC's failure to offer any plausible basis for its assertion that AAP and its speech about GAC may be subject to the FTC's jurisdiction further highlights the retaliatory motive behind the CID, rather than any legitimate concern about unfairness or deception in commerce.[5] The FTC's investigatory authority may be broad, as the FTC claims, but it is not limitless.

The Opposition fails to substantively address AAP's contention that the CID improperly targets non-commercial activities and statements, instead simply asserting that the argument "fails." Opp. 33. But in making such an assertion, the FTC ignores that AAP's speech and activities relating to GAC do not satisfy any of the factors that the FTC uses to determine whether speech is commercial. *See* ECF No. 6 at 31–34 ("Mot."). The FTC also ignores *FTC v. Agora Financial, LLC*, 447 F. Supp. 3d 350 (D. Md. 2020), which concluded that a health-related publication fell outside the FTC's jurisdiction as non-commercial speech even though the publication discussed medical treatments and was publicly disseminated. *Id.* at 364. AAP's Policy Statement and related publications that the CID targets are analogous: they are clinical guidance documents developed through a scientific review process, not commercial speech designed to promote a product or service. *Id.*

Instead of addressing AAP's arguments and case law, the FTC lists cases in which courts found that ostensible scientific literature constituted commercial speech where it was disseminated

---

[5] Notably, the District of Oregon recently granted summary judgment in favor of 21 states, against the Department of Health and Human Services ("HHS"); the states contended that a December 2025 declaration by Secretary Kennedy—in which he described AAP's Policy Statement as "very low-quality," *see* Grigsby Decl., ECF No. 6-2, Ex. 1—was unlawful and must be enjoined and vacated. *State of Oregon v. Kennedy*, No. 6:25-cv-02409, ECF No. 87 (D. Or. March 19, 2026) (minute entry and "formal written opinion and order" is forthcoming).

as part of a commercial strategy to market the publisher's *own* products. *See* Opp. 33 n.15 (collecting cases). AAP, by contrast, is not a pharmaceutical company, does not sell medical treatments, and has no financial stake in whether any particular treatment is prescribed. Its clinical guidance is not issued as part of a commercial strategy but instead serves a different function— informing doctors about scientific research on a variety of topics in pediatric medicine.

Apart from citing inapposite cases, the Opposition's primary response is procedural. It contends that determining whether speech is commercial requires a "fact-intensive" inquiry that the CID is purportedly designed to facilitate. Opp. 33. The Opposition raises this same procedural point to sidestep AAP's argument that, based on its non-profit status and purpose to promote the health of children, it cannot be considered a "corporation" that can be found to violate the FTC Act. *Id.* at 31–32. The Opposition suggests that the CID itself is needed to assess jurisdiction, and that it is thus premature for the FTC to reach any conclusion until AAP produces documents. *Id.* But this logic is circular: the FTC cannot justify the CID by arguing it needs the CID to determine whether the CID is justified.[6] The FTC must have some basis to believe AAP and its speech may be subject to its jurisdiction; otherwise, there would be no limit to the FTC's ability to issue CIDs. The fact that the FTC cannot supply any such basis underscores the retaliatory nature of the CID.

Furthermore, the FTC's conduct during the required meet-and-confer process with AAP following service of the CID reflects that the FTC was uninterested in determining whether it had jurisdiction over AAP's activities. AAP raised these same threshold jurisdictional issues with FTC staff in the first meet-and-confer, including whether the Commission viewed AAP's clinical

---

[6] The FTC states that it has broad authority to issue CIDs to entities that are not subject to its enforcement authority. Opp. 32. Importantly, the FTC will not disclaim its authority to investigate AAP for a Section 5 violation. Nor could the FTC. The CID states that the FTC *is* investigating whether AAP or any other person violated Section 5.

guidance as commercial speech and how a non-profit medical association could fall under the FTC Act at all. *See* Grigsby Decl., ECF No. 6-2 at 281–82. FTC staff declined to engage with those questions, stating that it did not "make a difference" whether the speech was commercial and that the meet-and-confer was not the appropriate forum to address jurisdiction. *Id*. AAP even requested that FTC staff extend the deadline to petition to quash the CID so that the parties could continue to share additional information and attempt to resolve AAP's concerns through the meet-and-confer process. Staff declined to extend the deadline. *Id.* at 283–84. The FTC staff's refusal to engage substantively with the concerns AAP raised confirms that the real reason for the CID is retaliation for AAP's protected activity.

Finally, the FTC takes inconsistent positions in attempting to justify the CID. Specifically, the CID's text identifies AAP as "the Organization" under investigation for potential FTC Act violations. *Id.* at 243. But the FTC has now shifted position and, in its Opposition, suggests that the CID is proper because AAP merely "may have information" relevant to others' potential violations. *See* Opp. 32; *id.* at 23–24 ("AAP is unusually likely to possess information bearing on whether other entities are making false or unsubstantiated claims regarding PGDT"); *id.* at 33 ("[A]s the author of the Policy Statement . . . AAP is quite likely to have information as to whether various statements regarding the safety and efficacy of PGDT can be scientifically substantiated."). The FTC cannot have it both ways. If AAP were a third-party information source, the CID would not name AAP as the subject of the investigation, nor would it demand broad categories of information about AAP's own "Covered Statements," AAP's own substantiation, or the communications AAP had with any organization, institution, or individual regarding the development and publication of its Policy Statement. *See e.g.,* Grigsby Decl., ECF No. 6-2 at 243–44. Against the backdrop of the FTC's documented hostility toward GAC, *see* Mot. 6-9, the FTC's

shifting justifications for its CID further illustrate that the investigation is, in fact, in furtherance of a retaliatory motive.

### C. The FTC Mischaracterizes Case Law and Makes Unsupported Factual Assertions That This Court Should Disregard.

The FTC argues that AAP's reliance on its lawsuit against HHS is misplaced because the lawsuit "had nothing to do with PGDT or the FTC." Opp. 38. Not so. The issue in that case concerned whether HHS improperly terminated grants to AAP in retaliation for AAP's exercise of its First Amendment rights on two public health topics: "gender affirming care for children and the utility of vaccinations." *See Am. Acad. of Pediatrics v. U.S. Dep't of Health and Hum. Servs.*, 2026 WL 80796, at *22 (D.D.C. 2026). The district court's decision discusses facts directly relevant to this investigation. *See id.* at *4 (discussing "HHS Official's Pejorative Statements about AAP," including the November 19, 2025, Press Release where HHS "impugn[ed] the reliability of AAP's policy recommendations on gender-affirming care"). AAP's continued work in supporting GAC is mentioned no fewer than ten times in the opinion as "circumstantial evidence supporting a likely causal link" between HHS's termination of AAP's grants and AAP's speech. *Id.* at *17. The FTC's inaccurate recounting of this case indicates that the CID was in fact motivated by AAP's protected petitioning activity in this matter.

Throughout its brief, the FTC also makes unsupported factual assertions, to which this Court should accord no weight. *See* 11A *Wright & Miller's Federal Practice & Procedure* § 2949 (3d ed. 1998) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction. Affidavits are appropriate on a preliminary-injunction motion."). For example, the FTC suggests that AAP may have a financial interest in the provision of GAC, citing an article that generally discusses how commercial health plans, Medicare, and Medicaid programs pay for GAC. *See* Opp. 12. The

9

article never mentions AAP or its members, or any discussion about purported financial interests between pediatricians and member organizations. The Court should not credit these types of foundationless assertions.[7]

## II. This Court Has the Authority to Hear AAP's Pre-Enforcement Challenge.

The FTC argues that the Court lacks jurisdiction over AAP's claims for two reasons. First, the FTC claims that the FTC Act precludes district court jurisdiction because it provides an exclusive review scheme. *See* Opp. 15–19. Second, the FTC argues that AAP has no cause of action. *See id.* at 20–21. Both arguments are without merit.

### A. The FTC Act Does Not Deprive This Court of Jurisdiction.

Under the Supreme Court's two-part test in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), a statutory review scheme only deprives a court of jurisdiction if: "(i) such intent is fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within [the] statutory structure." *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 498 (D.C. Cir. 2018).

#### 1. There Is No "Fairly Discernible" Intent in the FTC Act to Preclude District Court Jurisdiction.

Congress's intent to preclude district court review is fairly discernible where Congress provides a comprehensive review process of agency actions, including review "in a court of appeals following the agency's own review process." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023); *Thunder Basin*, 510 U.S. at 208–09 (finding preclusion of district court review where a mine safety act channels claims through an agency commission, followed by appellate court review); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 13–14 (2012) (finding preclusion of district court

---

[7] Despite the FTC's assertion, Opp. 27, it is unclear to AAP why the lack of specific allegations against Commissioner Holyoak would be relevant to determining the FTC's improper purpose as she departed the Commission nearly two months prior to the CID's issuance.

review where the Civil Service Reform Act channels claims to the Merit Systems Protection Board, followed by appeal to the Federal Circuit). "The agency effectively fills in for the district court, with the court of appeals providing judicial review." *Axon Enter., Inc.*, 598 U.S. at 185.

Where, as here, Congress has neither created a comprehensive review scheme nor displaced the traditional role of the district court, there is no "fairly discernible" intent to preclude district court jurisdiction. Unlike in *Thunder Basin* and *Elgin*, where Congress explicitly declined to provide for review in the district court, in the FTC Act Congress expressly contemplated district court involvement by authorizing district courts to adjudicate CID enforcement actions. *See* 15 U.S.C. § 57b-1(e); *Elgin*, 567 U.S. at 13–14 (emphasizing that Congress's objective in creating the act was to eliminate previously "inconsistent decisionmaking and duplicative judicial review"); *Thunder Basin*, 510 U.S. at 210–11 (noting that when amending the Mine Act, Congress expressly eliminated the previously permitted *de novo* review in the district court). Additionally, the FTC Act provides *no* mechanism for judicial review of challenges to FTC CIDs initiated by aggrieved parties, thus leaving undisturbed the strong presumption that agency actions are reviewable by a federal district court. *See Thunder Basin*, 510 U.S. at 209 (finding Congressional intent to foreclose district court review where regulatory scheme provided mechanism for plaintiff to "complain to the Commission and then to the court of appeals").

Indeed, applying the *Thunder Basin* framework, another Court in this District concluded that the FTC Act does not reflect a "fairly discernible" intent to preclude district court review. *Media Matters for Am. v. FTC*, 805 F. Supp. 3d 105, 119–24 (D.D.C. 2025) ("*Media Matters II*"); *see also Media Matters for Am. v. FTC*, No. 25-5302, 2025 WL 2988966, at *5 (D.C. Cir. Oct. 23, 2025) (denying stay pending appeal in *Media Matters II* because FTC unlikely to succeed on merits) ("*Media Matters III*"). Like in *Media Matters III*, AAP is not "seek[ing] to circumvent an

11

administrative proceeding" by bringing its action in district court. *Media Matters III*, 2025 WL 2988966 at *5. The FTC Act's express preservation of district court involvement and its failure to channel challenges to CIDs to an administrative process followed by appellate court review forecloses the inference that Congress intended to preclude district court jurisdiction.

> 2.    AAP's Claims Are Not of the Type Congress Intended to Be Reviewed Within the FTC Act's Review Scheme.

Even if the FTC Act's CID enforcement process constituted a comprehensive review scheme, AAP's claims fall outside of "the type [of claims] Congress intended to be reviewed" through CID enforcement actions. *Arch Coal, Inc.*, 888 F.3d at 500. Under the second part of the *Thunder Basin* test, the court must ask three questions: (1) could precluding district court jurisdiction "foreclose all meaningful judicial review" of the claim?; (2) is the claim "wholly collateral to the statutory review provisions"?; and (3) is the claim "beyond the expertise of the agency"? *Id.* When the answer to each question is yes, the court "presume[s] that Congress does not intend to limit jurisdiction." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010). "[T]he same conclusion might follow if the factors point in different directions." *Axon Enter.*, 598 U.S. at 186. "The ultimate question is how best to understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim in question." *Id.*

*First*, precluding district court jurisdiction would "foreclose all meaningful judicial review" of AAP's First and Fourth Amendment claims. *Free Enter. Fund*, 561 U.S. at 489. Under the FTC Act, there is no guaranteed avenue for judicial review of AAP's constitutional claims. The only mechanism for court involvement is a CID-enforcement action, the timing of which is entirely within the agency's control. Meanwhile, without any other form of judicial recourse or ability to challenge the FTC's action in court, AAP would be forced to endure the ongoing harm

resulting from the issuance of the CID itself.  *See Media Matters III*, 2025 WL 2988966, at *5 ("Allowing the party that has issued a demand that is causing concrete and ongoing First Amendment injury to dictate when, if ever, judicial review can commence could deprive parties of all meaningful judicial review of constitutional claims.") (citing *Axon*, 598 U.S. at 190–91). And, unlike in this Court's decision in *National Treasury Employees Union v. Trump*, 770 F. Supp. 3d 1, 8–9 (D.D.C. 2025), where the harms the plaintiff endured awaiting judicial review were "routine burdens," AAP is suffering irreparable injury to its First Amendment rights due to the issuance of the retaliatory CID.  *Id.* (expense of proceedings, loss of union dues, and recovering back pay without being subjected to "illegitimate proceeding" or "unconstitutionally structured" review process did not defeat preclusion).  Deferring review would render AAP's First Amendment rights "effectively lost," given the speech the CID has already chilled and continues to chill.  *Axon*, 598 U.S. at 192 (plaintiff's "here-and-now" injury of being subjected to "illegitimate proceeding, led by an illegitimate decisionmaker" created irreparable harm foreclosing meaningful judicial review).

*Second*, AAP's claim is "wholly collateral to the statute's review provisions."  *Id.* at 186. The FTC Act's review scheme focuses on a single question: whether AAP should have to comply with the CID.  15 U.S.C. § 57b-1(e).  It does not contemplate, much less provide an avenue for, AAP's constitutional challenge to the FTC's authority to issue the CID at all.  AAP's claims have "nothing to do with the enforcement-related matters" that would be resolved under the FTC Act's review scheme and instead challenge the existence of the CID.  *Axon Enter., Inc.*, 598 U.S. at 193. This suit is not limited to challenging the scope of the CID requests, the timing of its response, or the burden of the production demand; it is seeking review of the FTC's authority, as bounded by the Constitution.  Accordingly, AAP's constitutional claims are "wholly collateral" to the FTC

13

Act's CID enforcement scheme. *See id.* at 189 (statutory review scheme for challenging SEC and FTC proceedings did not preclude jurisdiction over claims that "agency [was] wielding authority unconstitutionally"); *Free Enter. Fund*, 561 U.S. at 490 (declining to limit district court's review where statutory review mechanism provided for a way to challenge auditing standards, but not constitutionality of government-created entity).

*Finally*, the FTC has no expertise in adjudicating constitutional questions like the ones AAP raises here. Unlike in *Thunder Basin* and *Elgin*, where the agencies had expertise in the subject matter of the underlying claims, AAP's First and Fourth Amendment claims are in no way related to the FTC's expertise in antitrust and consumer protection. *See Thunder Basin*, 510 U.S. at 214–15 (the Commission's "extensive experience" in addressing the issues raised in the mining industry made it the proper channel); *Elgin*, 567 U.S. at 22 ("A challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme."). The FTC insists that the FTC Act's statutory review scheme—including negotiations with the FTC, petitions to quash, and the FTC's ability to bring an action to enforce a CID—is the appropriate avenue to deal with AAP's claims; yet, when AAP raised its concerns with the CID during the meet and confer process, the FTC refused to engage with AAP on these issues. Grigsby Decl., ECF No. 6-2 at 281–84. "[W]here the agency was already afforded an opportunity to consider the constitutional harms caused by its demand—so that the only question is timing, not forum—there is no agency-expertise benefit to waiting." *Media Matters III*, 2025 WL 2988966, at *5.

Accordingly, the application of the *Thunder Basin* factors supports the district court's jurisdiction to hear AAP's First and Fourth Amendment claims.

**B.**      **AAP Has a Cause of Action to Seek Equitable Relief for Ongoing Constitutional Violations.**

14

Although the FTC argues that AAP "has no cause of action," plaintiffs have "an implied private right of action directly under the Constitution" to seek equitable relief challenging government action. *Free Enter. Fund*, 561 U.S. at 491 n.2. In attempting to rebut AAP's implied right of action, the FTC relies solely on Supreme Court precedent addressing whether a court can imply a *statutory* right of action or a right of action for *damages*. *See* Opp. 20–21; *Ziglar v. Abbasi*, 582 U.S. 120, 133–34 (2017) (addressing whether there was a cause of action for damages and emphasizing the distinction between recognizing "an implied cause of action under a statute" and "an implied cause of action to enforce a provision of the Constitution"); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71–72 (2001) (refusing to extend *Bivens* to create an implied right to damages against a private corporation); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328 (2015) (holding that the Medicaid Act precluded "private enforcement" of statutory right). But AAP is seeking equitable relief to halt an ongoing constitutional violation—relief that the Supreme Court has repeatedly confirmed lies at the core of federal courts' equitable authority. *See, e.g.*, *Armstrong*, 575 U.S. at 327 ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action.").

Additionally, the FTC argues that the Court should decline to imply an equitable cause of action because the FTC Act's review scheme and lack of an express cause of action make it clear that Congress intended to foreclose equitable relief. *See* Opp. 20. First, all of these cases pre-date *Axon*, in which the Supreme Court recognized that the plaintiff could bring an equitable claim against the FTC in district court. *See generally Axon*, 598 U.S. 175 (2023); Amended Compl., *Axon Enter. Inc. v. FTC*, No. 20-cv-00014 (D. Ariz. Aug. 30, 2023), ECF No. 61. Second, the pre-*Axon* cases on which the FTC relies also did not involve plaintiffs that were at risk of suffering

ongoing harm while waiting for the agency to bring an enforcement action. *See FTC v. Claire Furnace Co.*, 274 U.S. 160, 174 (1927) (declining to entertain pre-enforcement injunction where there was no harm to order recipient until enforcement proceeding); *Reisman v. Caplin*, 375 U.S. 440, 449 (1964) (witness faced no harm while challenging summons). In fact, in *Media Matters for America v. Paxton*, the D.C. Circuit explicitly held that *Reisman* does not govern cases in which the CID recipient is "suffering ongoing injuries due to the campaign of retaliation against them." 138 F.4th 563, 583 (D.C. Cir. 2025) ("*Media Matters I*"); *see Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1178 (9th Cir. 2022) ("This case is different from *Reisman* because it involves the First Amendment, under which a chilling effect on speech can itself be the harm."). Here, the issuance of the retaliatory CID *is itself* the harm. Unlike in *Claire Furnace* and *Reisman* where the plaintiffs could not point to any injury absent compelled compliance, the FTC's retaliatory investigation of AAP inflicted an immediate injury—one that exists regardless of whether AAP is ever required to comply with the CID—by chilling AAP's protected speech.

The Administration itself has acknowledged the imminency of First Amendment harms from the mere issuance of a subpoena. *See* Brief for the United States as Amicus Curiae at 18, *First Choice Women's Resource Ctrs., Inc. v. Platkin*, (No. 24-781). In *First Choice*, the New Jersey Attorney General issued administrative subpoenas to certain faith-based pregnancy counseling centers, who challenged the subpoenas as violations of their First Amendment rights. The U.S. Solicitor General, appearing as amicus curiae on behalf of the United States, argued that a subpoena recipient "faces an imminent injury" from the mere issuance of a subpoena—including "the burden of defending itself in an enforcement suit"—and that the "injury does not depend on how the enforcement proceeding ends." *Id.* The government further argued that a subpoena's "non-self-enforcing" character is irrelevant to justiciability. *Id.* The government also explained

16

that *Reisman v. Caplin*, 375 U.S. 440 (1964) and *FTC v. Claire Furnace Co.*, 274 U.S. 160 (1927)—cases on which the FTC relies heavily here—do not hold that subpoena recipients lack standing or have failed to show cognizable harm, but rather reflect only Congress's choice not to create a statutory cause of action for pre-enforcement review of federal subpoenas. *Id.* at 23 ("*Reisman* and *Claire Furnace* do not rest on Article III; they do not even mention Article III, justiciability, standing, or ripeness.").

Accordingly, this Court has jurisdiction because AAP has an implied right of action under the Constitution. The FTC's contrary position would imply that, absent an express right of action created by Congress, federal agencies may engage in unchecked, ongoing constitutional violations—an implication the Supreme Court has never endorsed. *See Corr. Servs. Corp.*, 534 U.S. at 74 ("[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally."); *Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[I]t is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution.").

### III.    AAP Is Likely to Succeed on Its First Amendment Retaliation Claim.

#### A.    Retaliatory Investigations Are Cognizable Under the First Amendment.

The FTC urges this Court to hold that retaliatory investigation claims are not cognizable at all—or at best, cognizable only in "extraordinary circumstances"—but the weight of authority refutes that position. Opp. 36. To begin, the Supreme Court in *Hartman v. Moore*, 547 U.S. 250 (2006), expressly reserved the question of "[w]hether the expense or other adverse consequences of a retaliatory investigation would ever justify recognizing such an investigation as a distinct constitutional violation." *Id.* at 262 n.9. The Court did not foreclose such claims; it declined to reach the issue because it was not presented. *Id.* Indeed, the Court recognized that investigations *can* inflict constitutional injuries, noting that an "action could still be brought against a prosecutor

17

for conduct taken in an investigatory capacity, to which absolute immunity does not extend." *Id.* at n.8 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 274–76 (1993)).  Converting *Hartman*'s express reservation into a basis for "skepticism" gets the inference backwards.  Opp. 36.

The FTC also cannot wave off the most on-point authority in this district, *Media Matters II*, 805 F. Supp. 3d 105.  *Media Matters* held that a retaliatory FTC investigation provides the basis for a cognizable First Amendment retaliation claim and granted a preliminary injunction on that basis.  *Id.* at 129.  Denying the FTC's stay request, the D.C. Circuit declined to disturb that ruling, finding that the FTC had "not shown a strong likelihood of success given the unique and (thus far) undisputed facts of this case." *Media Matters III*, 2025 WL 2988966, at *2.  The majority further observed that the FTC could succeed on the merits if it could "show that it would have issued the Demand on nonretaliatory grounds anyway"—a formulation that presupposes the viability of retaliatory investigation claims.  *Id.* at *9.  The FTC tries to dismiss *Media Matters* as "inapplicable," Opp. 39–40, including because the stay panel repeatedly characterized the FTC's retaliatory investigation into Media Matters as "presumably unique." *Media Matters III,* 2025 WL 2988966, at *2.  However, that the FTC replicated its practice of retaliatory investigations only after the stay panel referenced "unique" facts does not render *Media Matters* inapplicable given the FTC's similar course of conduct here.  *Compare id.* at *1–2 *with* Mot. 6–13.  And setting aside the dicta regarding uniqueness, the stay panel's refusal to vacate a preliminary injunction premised on a retaliatory investigation necessarily implies that such a theory is viable as a matter of law.

This makes good sense, because the D.C. Circuit had already declined to close the door on retaliatory investigation claims.  In *Media Matters I*, the court evaluated First Amendment retaliation claims arising from state CIDs and concluded that the plaintiff had adequately alleged ongoing injury from a retaliatory investigation.  138 F.4th at 579–80.  While the court did not

18

resolve the ultimate viability of retaliatory investigation claims (because the defendant forfeited the argument, *id.* at 584–85), it treated the plaintiff's investigative-retaliation theory as sufficient to satisfy Article III standing and ripeness—an outcome incompatible with the FTC's position that such claims are categorically unavailable. *Id.* at 579–80.

Furthermore, each out-of-circuit case the FTC cites to suggest that retaliatory investigation claims should not be recognized is distinguishable. Opp. 38. *Rehberg v. Paulk*, 611 F.3d 828, 837–39, 850 (11th Cir. 2010), concerned grand jury testimony and turned on prosecutorial immunity doctrines inapplicable to administrative agencies. *J.T.H. v. Missouri Department of Social Services Children's Division*, 39 F.4th 489, 491 (8th Cir. 2022), concerned alleged retaliation for threats to sue a child-welfare investigator, also implicating immunity issues not presented here. *Archer v. Chisholm*, 870 F.3d 603, 619–20 (7th Cir. 2017), and *Breaux v. City of Garland*, 205 F.3d 150, 158–61 (5th Cir. 2000), each concerned alleged violations of public employees' speech rights, again raising complications not applicable to this case. None of these cases involved the pattern presented here: a federal administrative CID targeting protected speech and petition activity by a non-profit membership organization, with numerous indicia of a retaliatory motive.

At a minimum, this Court should follow the approach of *Media Matters* and the D.C. Circuit stay panel, which recognizes that retaliatory investigations by federal agencies are actionable when accompanied by a sufficient showing of retaliatory motive and chilling effect.

### B.      The HHS Litigation Is Relevant to Causation Because It Involved AAP's Protected Petition Activity.

The FTC contends that the *AAP v. HHS* litigation is "not *factually* related to this case because it had nothing to do with PGDT or the FTC." Opp. 38–39. As noted above, *see supra* I.C that assertion is false. Furthermore, the primary relevance of *AAP v. HHS* is that it involved AAP's

19

exercise of its right to petition the government—activity the Supreme Court has described as "one of the most precious of the liberties safeguarded by the Bill of Rights." *Lozman v. Riviera Beach*, 585 U.S. 87, 101 (2018) (quoting *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002)).

AAP's lawsuit against HHS—challenging the termination of federal grants and the firing of advisory committee members—addressed quintessential matters of public concern: the integrity of scientific advisory processes and federal vaccine policy. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 382–83 (2011) (Petition Clause protects right to file lawsuits addressing matters of "public concern"). The temporal proximity between AAP's legal victory (January 11, 2026)[8] and the FTC's issuance of the CID (January 15, 2026) reinforces the causal inference.

The FTC protests that it "began investigating this topic long before the HHS decision," Opp. 30, but conflates its investigation generally with the decision to issue a CID specifically to AAP. The FTC's workshop occurred in July 2025; its public comment period closed in September 2025. Yet the Commission did not issue CIDs until January 15, 2026—four days after AAP prevailed in federal court against a different arm of the same Administration. The critical question is not when the FTC first became interested in PGDT, but when and why it chose to exercise its compulsory process against AAP. That four-day gap is the kind of temporal proximity that the D.C. Circuit has recognized as probative. *See Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (temporal proximity supports causation when "the two events are very close in time").

The FTC's attempt to sever the CID from the broader pattern of government action also fails. The Administration's posture toward AAP should not be viewed agency by agency.[9] Where

---

[8] The government is not appealing the *HHS* court's order granting AAP's requested preliminary injunction. No. 1:25-cv-04505, ECF No. 33 ¶ 2 (Mar. 10, 2026) (noting "Defendants' deadline to appeal . . . [wa]s Thursday, March 12, 2026, and Defendants do not plan to appeal").

[9] Even if it was, Chairman Ferguson has made clear that the "Trump-Vance FTC" is not operating as an independent enforcement agency, but "[u]nder the President's leadership." ECF No. 1 ¶ 68.

an organization has been subjected to adverse action across multiple agencies in rapid succession—grant terminations by HHS, followed by compulsory process from the FTC—the totality of the circumstances is properly considered.  The Supreme Court's retaliation framework evaluates whether the adverse action "would have occurred even without a retaliatory motive." *Hartman*, 547 U.S. at 261.  Evidence of coordinated or overlapping government hostility toward the same organization for the same type of protected activity is relevant to that inquiry.  *See Media Matters III*, 2025 WL 2988966, at *6–7 ("pattern of litigation and information demands" from multiple government agencies supports causation).

### C.    **The Timeline Supports an Inference of Retaliation.**

The FTC argues that AAP cannot establish temporal proximity because its "principal statements regarding PGDT . . . are too far removed" from the CID, Opp. 30, but this framing artificially isolates individual speech acts from AAP's ongoing pattern of protected activity.  Protected activity need not be a single discrete event to support a retaliation claim.  *See Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (evaluating "causal link between the exercise of a constitutional right and the adverse action").  Even if it did, AAP is not a one-time speaker.  Its protected activity includes not only the Policy Statement but also its ongoing advocacy, public commentary, amicus briefing, litigation against HHS, and sustained public criticism of the Administration's healthcare policies.  *See* Mot. 6, 17–19.  Temporal proximity is properly measured from the most recent protected activity: AAP's January 11, 2026 litigation victory against HHS, which preceded the CID by just four days.[10]  *See Singletary v. District of Columbia*,

---

[10] The FTC's argument that "AAP makes no effort to identify any protected activity that is temporally proximate to the CID's issuance" fails on its own terms.  Opp. 30.  Even assuming AAP's January 11, 2026 litigation victory does not suffice, the complaint and the preliminary injunction motion granted in *HHS* were both filed on December 24, 2025, 22 days before the CID was issued.  *See* Mot. 24–25; *AAP v. HHS*, No. 25-cv-04505, ECF Nos. 1–2 (Dec. 24, 2025).

21

351 F.3d 519, 525 (D.C. Cir. 2005) ("A close temporal relationship may alone establish the required causal connection."); *BEG Invs., LLC v. Alberti*, 144 F. Supp. 3d 16, 22–23 (D.D.C. 2015) (collecting cases holding that "a period of one month or shorter typically suffices").

This Court found a comparable sequence probative in *American Bar Association v. U.S. Department of Justice*, 783 F. Supp. 3d 236 (D.D.C. 2025) (*"ABA"*). In *ABA*, DOJ terminated federal grants to the ABA one day after announcing its policy of limiting DOJ engagement with the ABA—a policy DOJ acknowledged was prompted by the ABA suing the United States approximately three months prior. Explaining that the timing of the termination could show retaliation, the *ABA* Court held that "temporal proximity . . . is probative of Defendants' retaliatory motive" even though the policy memorandum "did not purport to terminate any of the grants" itself. *Id.* at 246. The parallel here is at least as strong: the FTC's workshop occurred in July 2025 and public comments were reviewed over the following months, yet the FTC waited until January 15, 2026—four days after AAP prevailed against HHS in this Court—to escalate to compulsory process.

Moreover, this timeline does not stand alone, but must be considered in the context of broader circumstances, including: Executive Orders targeting GAC advocacy; hostile statements by FTC Commissioners and staff; the Administration's demonstrated pattern of retaliating against AAP through other agencies, *see AAP v. HHS*, 2026 WL 80796, at *20; the lack of a legitimate jurisdictional basis for the investigation; and the sweeping scope of the CID itself. *See* ECF No. 1-1. At a minimum, this pattern "suggests that there may be more to this story." *Smith v. De Novo Legal, LLC*, 905 F. Supp. 2d 99, 104 (D.D.C. 2012). And "the totality of the circumstantial evidence" establishes a "likely causal link." *AAP v. HHS*, 2026 WL 80796, at *17.

### D.    AAP Has Demonstrated That the CID Chilled Its Speech.

The FTC argues that AAP would need to assert extraordinary circumstances to show

22

chilling for its retaliatory investigation claim. Opp. 36–37. According to the FTC, AAP has identified only "routine injuries" inadequate to demonstrate a retaliatory chilling claim. *Id.* at 37.[11] This argument ignores settled precedent acknowledging that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The FTC's attempts to dismiss the harms the CID inflicts on AAP as "speculative," Opp. 37, do not alter that conclusion. *See Karem v. Trump*, 960 F.3d 656, 667 (D.C. Cir. 2020) ("[Even] a prospective violation of a constitutional right constitutes irreparable injury."). AAP has shown that the CID has already chilled its First Amendment activity, restricting its ability to engage with its members, collaborate with its peers, and participate in good-faith scientific disagreement. Mot. 18–20, 24–27; *see Media Matters II*, 805 F. Supp. 3d at 138 (concluding under materially similar circumstances that plaintiff "easily" demonstrated irreparable harm because CID chilled First Amendment activity).

The FTC's argument that AAP's size and resources make a finding of chill "particularly implausible," Opp. 37, has no basis in law. The standard is whether a "person of ordinary firmness" would be deterred, *Aref*, 833 F.3d at 258—not whether a well-resourced organization can weather the storm. A large membership organization whose members may individually face professional consequences from a federal investigation is, if anything, more susceptible to chilling effects, not less—precisely the dynamic recognized in *NAACP v. Alabama*, 357 U.S. 449, 462–63 (1958) (compelled disclosure of membership information chills associational rights because it may "induce members to withdraw from the Association and dissuade others from joining it").

---

[11] The FTC's reliance on *FTC v. Cinderella Career & Finishing School, Inc.*, 404 F.2d 1308 (D.C. Cir. 1968), is misplaced. Opp. 37. *Cinderella* addressed the collateral reputational effects of press releases about a legitimate FTC complaint. *See* 404 F.2d at 1314. Where, as here, the investigation is itself alleged to be unconstitutional, the chilling effect is not an incidental cost of lawful government action but the very constitutional injury at issue.

23

**IV.**     <u>**AAP Is Likely to Succeed on Its First and Fourth Amendment Claim.**</u>

The FTC incorrectly urges that AAP's First and Fourth Amendment claim—challenging the CID's scope as impermissibly overbroad—is "premature."  Opp. 40.  But if a CID demanding an organization's deliberations, advocacy strategy, and communications with allies and members cannot be challenged until its enforcement, then the government can wield compulsory process to probe the inner workings of advocacy organizations with impunity, secure in the knowledge that the mere *pendency* of the demand chills protected activity long before any court can intervene. *Media Matters III*, 2025 WL 2988966, at *5 ("Allowing the party that has issued a demand that is causing concrete and ongoing First Amendment injury to dictate when, if ever, judicial review can commence could deprive parties of all meaningful judicial review of constitutional claims.").

The First Amendment limits the government's ability to compel disclosure of materials that reveal an organization's internal advocacy processes.  *See* Mot. 28–30; *see also NAACP*, 357 U.S. at 462–63 (holding that compelled disclosure of membership information is "likely to affect adversely the ability of [the organization] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate.").  Although the FTC contends there is no "heightened" Fourth Amendment scrutiny for CIDs implicating First Amendment interests, it repeatedly omits the requirement of "scrupulous exactitude" embedded in its own authority. Opp. 41; *see* Mot. 28–30.  The CID demands materials going to the core of AAP's advocacy and associational activities, as detailed in AAP's motion for a preliminary injunction.  *See* Mot. 28–29.  AAP is not required to wait until these materials have been turned over—and the constitutional harm consummated—before obtaining judicial review.

**V.**     <u>**The Remaining Equitable Factors Favor an Injunction.**</u>

The FTC's irreparable harm arguments rest on the false premise that no First Amendment violation has occurred, and therefore AAP's claimed injuries are merely the "ordinary burdens

24

associated with responding to an administrative subpoena." Opp. 43 (citing *Claire Furnace Co.*, 274 U.S. at 174). The FTC's reasoning is circular: it assumes the conclusion that the CID is lawful in order to characterize the resulting injuries as routine. The FTC characterizes AAP's injuries as merely reputational, financial, or self-inflicted, but misses the mark each time. Opp. 43. AAP's core injury is the ongoing chill on AAP's speech, petition activity, and associational freedoms, *see Karem*, 960 F.3d at 667, which is a direct and foreseeable consequence of the CID, not any independent intervening cause. *See Media Matters I*, 138 F.4th at 581.

The FTC's arguments on the balance of equities and public interest fare no better. The FTC invokes the public's interest in "robust enforcement of the FTC Act" and warns of "grievous harm" from enjoining its ability to investigate. Opp. 43. But this Court has repeatedly held that "[g]overnment actions in contravention of the Constitution are 'always contrary to the public interest.'" *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 386 (D.D.C. 2020) (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)). The FTC's reliance on *Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025), to argue that the government suffers irreparable harm from injunctions that "likely exceed the courts' authority," Opp. 43, is inapposite because *CASA* expressly preserved federal courts' power to grant injunctions "necessary to provide complete relief to each plaintiff with standing to sue."[12]  606 U.S. at 860–61.

## CONCLUSION

For the reasons set forth above, the Court should grant AAP's motion for a preliminary injunction.

---

[12] Nor is the specter of "copycat pre-enforcement challenges," Opp. 44, a cognizable equitable interest. The possibility that other targets of retaliatory government investigations might seek judicial protection of their constitutional rights is not a harm to be avoided; it is the legal system functioning as intended. "There is a substantial public interest in having governmental agencies abide by the . . . laws that govern their existence and operations." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (internal quotation marks omitted).

25

**REQUEST FOR ORAL ARGUMENT**

To the extent that oral argument may assist the Court in the resolution of the issues contained in AAP's motion for a preliminary injunction, Plaintiff requests oral argument at a date and time at which the parties may be heard.

March 23, 2026                                        Respectfully submitted,

                                        By:  /s/ Stacey K. Grigsby

                                        Stacey K. Grigsby (DDC Bar No. 491197)
                                        Laura Kim (D.C. Bar No. 473143)*
                                        Amber M. Charles (DDC Bar No. 1035226)
                                        Alexandra J. Widas (DDC Bar No. 1645372)
                                        Alexandra J. Remick (D.C. Bar No. 1737692)*
                                        COVINGTON & BURLING LLP
                                        One CityCenter
                                        850 10th Street NW
                                        Washington, DC 20001
                                        sgrigsby@cov.com
                                        lkim@cov.com
                                        acharles@cov.com
                                        awidas@cov.com
                                        aremick@cov.com

                                        * Petition for Admission Pending

                                        **Attorneys for Plaintiff American Academy of Pediatrics**

26